## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Great West Casualty Company,**            **CASE NO.  1:21-cv-00441**

                                    **Plaintiff,**

-vs-

                                            **JUDGE PAMELA A. BARKER**

**Maric Transportation, Inc., et al.,**

                                            **MEMORANDUM OPINION AND**
                                **Defendants.**        **ORDER**

Currently pending are (1) Plaintiff and Counter-Defendant Great West Casualty Company's ("Great West") Motion for Summary Judgment filed on March 15, 2022 ("Great West's Motion") (Doc. No. 39); and (2) Defendants and Counter-Claimants Susan Quinones's and Joyce McKenzie's (together "Defendants") Cross-Motion for Partial Summary Judgment filed on April 12, 2022 ("Defendants' Motion") (Doc. No. 41).  Great West filed a combined Brief in Opposition to Defendants' Motion and Reply in Support of its Motion on May 12, 2022 ("Great West's Opposition") (Doc. No. 44), and Defendants filed a Reply in Support of their Motion on May 24, 2022 ("Defendants' Reply") (Doc. No. 45).

For the following reasons, Great West's Motion is GRANTED, and Defendants' Motion is DENIED.

I.    **Background**

    A.    **Stipulated Facts**

Great West and Defendants (together, the "parties") have stipulated to the following facts. (Doc. Nos. 38, 43, 46.)

i. **The Accident**

On April 7, 2018, Olanyanju Ladejo ("Ladejo") was operating a 2007 Freightliner tractor with VIN 1FUJA6CVX6PU98227 owned by Wisconsin Trucks, Inc. ("Wisconsin Trucks"), Jovo Mihic, and White Eagles.  (Doc. No. 38, ¶ 2.)  At the same time, Ladejo was hauling a 2012 Great Dane Trailer VIN 1GRAP0620CT564202 owned by M&M Express, Inc. (together, with the Freightliner, the "Vehicle").  (*Id.*)  While doing so, Ladejo negligently rear-ended a van operated by David Scheehle ("Scheehle").  (*Id.*)  A true and accurate copy of a portion of the Ohio Highway Patrol Crash report is attached as Exhibit B to the Stipulations of Facts and the parties stipulate to the facts contained therein.  (*Id.* & Ex. B.)

At the time of the accident, Ladejo was transporting cargo under a contract between Wisconsin Trucks and ProServ Logistics, Inc. ("ProServ Logistics"), a third-party freight broker.  (*Id.* at ¶ 5.)  The contract between ProServ Logistics and Wisconsin Trucks is presumed to be valid and was in effect at the time of the accident.  (*Id.* at ¶ 7.)   A true and accurate copy of the agreement between Wisconsin Trucks and ProServ Logistics is attached as Exhibit G to the Amended Supplemental Joint Stipulations of Facts.  (Doc. No. 46, ¶ 2 & Ex. G.)

Ladejo was engaged in the interstate transportation of goods on behalf of Wisconsin Trucks at the time of the accident.  (Doc. No. 38, ¶ 6.)  Ladejo was driving a vehicle used in the business of the person or entity to whom the vehicle was rented, leased, or loaned at the time of the accident.  (*Id.* at ¶ 9.)

ii. **The Insurance Policies**

Effective February 1, 2018 through February 1, 2019, Great West issued a "Non-Trucking Use" ("NTU") Commercial Lines Policy numbered ICP00366M to the Independent Contractors of

2

Wisconsin Truck Owner Operators Association (the "NTU Policy").  (Doc. No. 38, ¶ 1.)  The NTU Policy was issued to the insured in New Berlin, Wisconsin.  (*Id.*)   A true and accurate copy of the NTU Policy is attached as Exhibit A to the Stipulations of Facts.  (*Id.* & Ex. A.)

Maric Transportation, Inc. ("Maric Transportation") is a member of the Independent Contractors of Wisconsin Truck Owner Operators Association and is an insured under the Great West NTU Policy.  (*Id.* at ¶ 4.)  A certificate of insurance for the Great West NTU Policy, a true and accurate copy of which is attached as Exhibit D to rhe Stipulations of Facts, identifies Wisconsin Trucks as the motor carrier.  (*Id.* at ¶ 4 & Ex. D.)   The contract or agreement between Maric and Wisconsin Trucks, a true and accurate copy of which is attached as Exhibit F to the Amended Supplemental Joint Stipulations of Facts ("the Independent Contractor and Policy Agreement"), is presumed to be valid and was in effect at the time of the accident.  (*Id.* at ¶ 7; Doc. No. 46, ¶ 1; Doc. No. 46-1.)

The Independent Contractor and Policy Agreement contains the following relevant provisions:

<u>Predrag Maric</u> UNDERSTAND AND AGREE TO THE TERMS IN THIS CONTRACT DATED <u>Jan[.] 13, 2018</u>

1.  I understand that I am an Independent Contractor/ Owner Operator.  This agreement shall remain in full force and effective for a 1 year period beginning on the date first written above and continuing thereafter on a year to year basis.  Either Party may terminate this Agreement at any time, with or without cause.

\*\*\*

13. I understand that taking the tractor and trailer anywhere other than agreed upon trip origin route and destination or my personal use or place of residence requires verbal notification/disclosure to Wisconsin Trucks, Inc.

\*\*\*

3

15. It iss [sic] my responsibility to make and keep copies of the Vehicle Trip Report, Vehicle Expense Report, Bill of Lading and all receipts of each trip until Wiscosnin [sic] Trucks, Inc. has been paid by the broker or shipper and I have been paid by Wisconsin Trucks Inc.  If the original copies are lost in the mail or due to my negligence and I cannot provide copies, I will be responsible for all expenses and lost earnings to Wisconsin Trucks, Inc. as well as my loss of pay for said load.

16. I understand, acknowledge and give Wisconsin Trucks, Inc. permission to withdraw and/or deduct monies from my net revenue/pay for the following conditions:
   a. Cash Advances.
   b. Shortages in trip funds by my failure to provide receipts for fuel, supplies or other items and services that I have been advanced monies to purchase on behalf of Wisconsin Trucks, Inc[.]
   c. My failure to provide copies of BOL, Trip Sheet, Expense Report and all receipts for load.
   d. Any charges or penalties to pick up or deliver load on time scheduled.
   e. Any physical damage on the tractor and trailer assigned to me if any accidents occur.
   f. Any towing charges for vehicles that I own or assigned to me if I am found at fault in an accident.
   g. Fees and penalties assessed by the US DOT due to driver qualification violations.
   h. I understand that this is not a complete list of items that may arise that could effect [sic] deductions from my revenue and that I have the right to submit a written rebuttal to Wisconsin Trucks Inc[.] for consideration of reversal of deductions from wages for items listed and not listed.

17. I understand that Wisconsin Trucks will provide Cargo and Liability coverage for me, the truck and trailer that I will be using while working for Wisconsin Trucks, Inc[.]

18. I understand that I will be provided with the Certificate of Insurance and will have to be responsible to keep with me at all times proving that the truck, trailer and driver are covered under Cargo and Liability Insurance that is offered by carrier Wisconsin Trucks Inc.

19. Wisconsin Trucks Inc[.] will provide coverage for Cargo up to $100,000 as stated on the certificate of insurance given to me.

4

20. Wisconsin Trucks Inc[.] will provide coverage for Liability up to $1,000,000 as stated on the certificate that was given to me.

21. I understand that in case of an accident that Wisconsin Trucks will cover cargo damages and losses and liability demages [sic] of bodily injury or property demage [sic] caused by and [sic] accident up to their limits.

22. I understand that if there is any other excess of the policy limit I as contractor/owner operator will be liable for any such amount above that limit. . . .

(Doc. No. 46-1, PageID # 520-22.)

The signature line above "Contrac[t]or/Owner Operator, Maric Transportation Inc., Predrag Maric on the last page of the Independent Contractor and Policy Agreement contains a handwritten signature of Predrag Maric.  (*Id.* at PageID # 522.)

Neither the 2007 Freightliner identified as VIN 1FUJA6CVX6PU98227 nor the 2012 Great Dane Trailer identified as VIN 1GRAP0620CT564202 that Ladejo was driving at the time of the accident were listed under the NTU Policy on file with Great West.  (Doc. No. 38, ¶ 13.)

Wisconsin Trucks was insured for trucking liability under a policy of insurance issued by Spirit Commercial Auto Risk Retention Group ("Spirit") at the time of the crash.  (*Id.* at ¶ 10.)  The policy issued by Spirit provided coverage for any negligence alleged on the part of Ladejo or Wisconsin Trucks giving rise to Defendants' claims.  (*Id.* at ¶ 11.)  Spirit was placed in receivership by the Nevada Department of Insurance, is insolvent, and is in the process of liquidation.  (*Id.* at ¶ 12.)

### iii.        The Underlying Lawsuit

On July 30, 2020, Defendants Quinones (as Scheele's legal guardian) and McKenzie (Scheehle's mother) filed a complaint, a true and accurate copy of which is attached as Exhibit C to the Stipulations of Facts, against numerous individuals and entities, including Ladejo, Maric Transportation and Predrag Maric ("Maric"), for injuries and damages arising out of the April 7, 2018

5

accident in the Trumbull County Court of Common Pleas bearing case number 20CV00883 ("Trumbull County Action"). (Doc. No. 38, ¶¶ 3-4 & Ex. C.)

Great West is currently providing Maric Transportation, Maric, and Ladejo with a defense to the claims asserted against them in the Trumbull County Action pursuant to a reservation of rights. (*Id.* at ¶ 14.)

**B.     NTU Policy Language**

Section I, titled "Covered Autos," of the "Commercial Auto Cover Part Wisconsin Non-Trucking Use Coverage Form" of the NTU Policy reads in relevant part as follows:

> **59= INDEPENDENT CONTRACTOR COMMERCIAL AUTOS.** Only those trucks, tractors and "trailers" on file with us that are leased by the "motor carrier" shown in the Declarations under this symbol and only while under a written lease agreement of thirty (30) days or more. This includes only those "autos" for which a premium has been paid for the coverages offered by the policy and only while the lease is in force. If the lease is cancelled or expires then no coverage shall apply.

(Doc. No. 38-1, PageID # 364.)

Section II, titled "Covered Autos Liability Coverage," of the Wisconsin Non-Trucking Use Coverage Form of the NTU Policy provides in relevant part as follows:

**A.     COVERAGE**

> We will pay all sums the "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" only while:
>
> **1.**     A covered "auto" is not used to carry property in any business; and
>
> **2.**     A covered "auto" is not used in the business of anyone to whom the "auto" is rented, leased, or loaned.
>
> \*\*\*

6

We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . .  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(*Id.* at PageID # 366.)  (Hereinafter, "the Insuring Agreement.")

**1.    WHO IS AN INSURED**

The following are "insureds":

**a.**    You for any covered "auto".

**b.**    Anyone else while using with your or any adult family member's permission a covered "auto" you own, hire or borrow except:

**(1)**    The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

**(2)**    Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

\*\*\*

**c.**    The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is being used exclusively by you and:

**(1)**    Is not used to carry property in any business; and

**(2)**    Is not used in the business of anyone to whom the "auto" is rented, leased or loaned.

(*Id.* at PageID # 366.)

**B.    EXCLUSIONS**

This insurance does not apply to any of the following:

7

\*\*\*

2.      **CONTRACTUAL**

Liability assumed under any contract or agreement.  But this exclusion does not apply to liability for damages:

a.      Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; . . .

(*Id.* at PageID # 367-68) (Hereinafter, "the exception to the assumed contract exclusion.")

\*\*\*

15.     **MOTOR CARRIER OPERATIONS**

This insurance does not apply to:

a.      A covered "auto" while used to carry property in any business; or

b.      A covered "auto" while used in the business of anyone to whom the "auto" is rented, leased, or loaned.

(*Id.* at PageID # 370.)  (Hereinafter, "the Motor Carrier Operations exclusion.")

Under Section VI–Definitions, the term "insured contract" is defined in relevant part as follows:

L.      **"Insured contract"** means:

\*\*\*

5.      That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; . . .

(*Id.* at Page ID # 378.)

8

The NTU Policy also contains an endorsement titled "Motor Carrier Reimbursement" (the "Endorsement").  (*Id.* at PageID # 350-51.)  The Endorsement modifies insurance provided under the Commercial Auto Coverage Part and provides that "the provisions of the Coverage Form apply unless modified by [it]."  (*Id.* at PageID # 350.)  It provides in relevant part as follows:

> Description of Covered "Auto(s)":
> **APPLIES TO ALL COVERED "AUTOS".**
>
> **A.    COVERAGE**
>
> 1.    We will pay any contractual obligation you have to reimburse the Motor Carrier to whom you are leased for any "loss" due to an "accident" and resulting from the ownership, maintenance or use of a covered "auto".  This coverage applies only if such "loss" is in a written agreement and is a type of "loss" listed in the SCHEDULE on this endorsement.
>
> 2.    We have the right and duty to defend any "insured" against a "suit" asking for such damages.  However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to property of others to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Limit of Insurance for this coverage has been exhausted by payment of judgments or settlements.

(*Id.*)

## II.    Procedural History

On February 25, 2021, Great West filed a Complaint in this Court seeking Declaratory Judgment.  (Doc. No. 1.)  Specifically, Great West's Complaint contains four counts: (1) Declaratory Judgment that claims against Maric Transportation in the Trumbull County Action are not covered under the NTU Policy because neither the tractor nor trailer are covered autos (Count I); (2) Declaratory Judgment that the alleged loss giving rise to the claims against Maric Transportation in the Trumbull County Action are not within the coverage grant of the NTU Policy (Count II); (3)

9

Declaratory Judgment that claims against Maric Transportation in the Trumbull County Action are excluded under the NTU Policy (Count III); and (4) Declaratory Judgement that Ladejo is not an insured under the NTU policy and/or coverage is otherwise excluded (Count IV). (*Id.* at 9-12.)

On June 21, 2021, Defendants Quinones and McKenzie filed an Answer and Counterclaim for Declaratory Judgment. (Doc. No. 13.) Defendants' Counterclaim contains two counts: (1) Declaratory Judgment that Maric Transportation, Maric, and/or Ladejo are entitled to coverage under the policy's assumed contractual liability exception (Count I); or alternatively (2) Declaratory Judgment that the policy's unqualified limit and exclusion of coverage to non-trucking uses violates applicable financial responsibility laws and is unenforceable such that Maric Transportation, Maric, and/or Ladejo are entitled to coverage for Defendants' claims (Count II). (*Id.*) On July 12, 2021, Great West answered Defendants' Counterclaim. (Doc. No. 20.)

On March 15, 2022, Great West filed its Motion for Summary Judgment. (Doc. No. 39.) On April 12, 2022, Defendants Quinones and McKenzie filed a Cross-Motion for Partial Summary Judgment and opposing Great West's Motion. (Doc. No. 41.) On May 12, 2022, Great West filed a combined Opposition to Defendants' Motion and a Reply in support of its Motion. (Doc. No. 44.) Then, on May 24, 2022, Defendants filed a Reply in support of their Motion. (Doc. No. 45.) The parties also submitted Stipulations of Facts on March 15, 2022 (Doc. No. 38), Supplemental Joint Stipulations of Facts on April 14, 2022 (Doc. No. 43), and an Amended Supplemental Joint Stipulation of Facts on September 8, 2022 (Doc. No. 46). The parties' motions are now ripe for review.

## III.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch*., 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Ky. Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alteration in original).  A fact is "material . . . only if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact."  *Ask Chems., LP v. Comput. Packages, Inc*., 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp*., 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may [also] meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'"  *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 F. App'x at 508-09.  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence

11

that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## IV.    Analysis

In its Motion, Great West seeks a declaration that (1) the allegations against Maric Transportation and Ladejo in the Trumbull County Action are not covered by the NTU Policy; (2) Great West is not obligated to provide coverage to either Maric Transportation or Ladejo under the NTU Policy; and (3) Defendants are bound by the Court's coverage determination. (Doc. No. 39 at 12.) Great West argues that summary judgment should be granted in its favor for two overarching reasons: (1) the insurance coverage is not triggered here because the Vehicle is not a "covered auto" under the NTU Policy; and (2) even if the Vehicle was a covered auto, the Motor Carrier Operations exclusion applies to exclude coverage because at the time of the accident, Ladejo was using the Vehicle to transport property in the course of Wisconsin Trucks' business, and the Vehicle was being used in the business of Wisconsin Trucks, who had rented, leased, or borrowed the Vehicle from Maric Transportation. And, according to Great West, there are no exceptions to these exclusions that would reinstate coverage. (*Id.* at 10-11.)

Defendants' Motion seeks an Order from this Court (1) denying Great West's Motion; (2) granting Defendants' Motion; (3) declaring that Maric Transportation, Maric, and Ladejo are entitled to a defense; and (4) dismissing the remainder of the case without prejudice as the issue of Great West's duty to indemnify Maric Transportation, Maric, and Ladejo is premature. (Doc. No. 42 at 2.) In their Motion, Defendants argue in particular that Maric Transportation, Maric, and Ladejo contractually assumed liability for torts they committed while leased to Wisconsin Trucks, and such

liability falls within the coverage afforded under the endorsement, as well as the exception to the assumed contract exclusion.  (*Id.*)

### A.   Interpretation of Insurance Contracts Under Wisconsin Law

The parties do not dispute that Wisconsin law governs the interpretation of the NTU Policy and cite to Wisconsin law for the evaluation of the NTU Policy.  (Doc. No. 39 at 9; Doc. No. 42 at 8.)  The Court will briefly address the general principles governing the interpretation of insurance contracts under Wisconsin law. These principles will inform the Court's subsequent analysis of the parties' arguments.  Under Wisconsin law, the Court must first "look to a policy's initial grant of coverage." *Casey v. Smith*, 846 N.W.2d 791, 796 (Wis. 2014).  If coverage is granted, the Court must next "examine whether any exclusions withdraw coverage from a claim." *Id.*  Then, "if an exclusion applies, the court will then consider whether there are any exceptions to the exclusion that reinstate coverage." *Id.*

The Court interprets "policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured." *Hirschhorn v. Auto-Owners Ins. Co.*, 809 N.W.2d 529, 535 (Wis. 2012).  "Thus, the first task in construing an insurance policy is to determine whether there is ambiguity with respect to the disputed coverage." *State Farm Mut. Auto. Ins. Co. v. Langridge*, 683 N.W.2d 75, 81 (Wis. 2004).  Language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Folkman v. Quamme*, 665 N.W.2d 857, 864 (Wis. 2003) (quoting *Danbeck v. Am. Family Mut. Ins. Co.*, 629 N.W.2d 150, 154 (Wis. 2001)).  However, "the mere fact that a word has more than one dictionary definition, or that the parties disagree as to its meaning, does not render the word ambiguous if only one meaning comports with an insured's objectively reasonable understanding." *Hirschhorn*, 809 N.W.2d at 535.

13

"If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law." *Folkman*, 665 N.W.2d at 864.  If, however, there is an ambiguous clause in the insurance policy, the clause will be construed in favor of the insured.  *See id.*  Nevertheless, this rule has limitations.  The Court does not "interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004).

### B. Commercial Auto Coverage

Great West argues that coverage under the NTU Policy is not triggered here because the Vehicle is not a "covered auto" as defined by the NTU Policy.  (Doc. No. 39 at 7.)  Further, Great West argues that even if coverage is triggered, because the Vehicle was "being used to carry property in the business of another and was being used in the business to one whom the truck was rented, leased, or loaned," coverage is excluded under the NTU Policy.  (*Id.*)  Defendants do not seem to oppose Great West's arguments regarding the interpretation and analysis of these provisions of the NTU Policy.  Accordingly, and after an independent review of the NTU Policy, the Court agrees with Great West.

Under the NTU Policy's Declarations, Covered Autos for Covered Autos Liability Coverage are described in Section I under the symbol "59."  (Doc. No. 38-1, PageID # 340.)  According to symbol "59," Covered Autos are only those that are "on file" with Great West that are leased by the motor carrier under a written lease agreement of thirty (30) days or more.  (*Id.* at PageID # 364.)  The parties have stipulated that the Vehicle was not "listed under the NTU Policy on file with Great West." (Doc. No. 38, ¶ 13.)  Thus, the Vehicle is not a covered auto under the NTU Policy.

14

Further, even if the Vehicle qualified as a covered auto—and it does not—the Insuring Agreement and the Motor Carrier Operations exclusion, both of which provide that the insurance does not apply to covered autos being used to carry property in any business, or while being used in the business of anyone to whom the auto is rented, leased, or loaned, apply to preclude coverage to Maric,  Maric Transportation and Ladejo.  (Doc. No. 38-1, PageID # 366, 370.)  The parties have stipulated that the Vehicle was being used in the business of the person or entity to whom the vehicle was rented, leased, or loaned at the time of the accident.  (Doc. No. 38, ¶ 9.)  Specifically, Ladejo was using the Vehicle to transport property in the course of Wisconsin Trucks' business, and the Vehicle was being used in the business of Wisconsin Trucks, who had rented, leased, or borrowed the Vehicle from Maric Transportation.  Thus, the Covered Autos Liability Coverage does not apply here.

### C.        Motor Carrier Reimbursement Endorsement (the "Endorsement")

While Defendants do not dispute Great West's arguments regarding the interpretation of the NTU Policy's Insuring Agreement and Motor Carrier Operations exclusion, Defendants argue that the Endorsement expands the NTU Policy's coverage beyond that contained in the Insuring Agreement, entitling Maric Transportation, Maric, and Ladejo to a defense and indemnification under the policy.  (Doc. No. 42 at 11-15.)  Generally, Defendants assert, but do not cite to any evidence for their assertion, that Maric Transportation, Maric, and Ladejo, "foreseeing this possibility" that they "may be liable in tort and contractually for any damages in excess of Wisconsin Trucks' available coverage," purchased the endorsement to close this gap in coverage "and provide coverage where [] they assumed contractual liability under an insured contract with Wisconsin Trucks regardless of whether that liability arose from trucking or non-trucking operations."  (*Id.* at 8.)

15

Specifically, Defendants argue that the endorsement's description of covered autos as "All Covered 'Autos'" is "vague, confusing, and indeterminable," and "in light of the endorsement's language and purpose, an objectively reasonable insured could conclude that any auto is covered so long as the insured is contractually obligated to reimburse a motor carrier to whom the insured is leased for loss arising out of the ownership, maintenance, or use of that auto." (*Id.* at 14.)  Defendants assert that this construction is "consistent with the purpose of the endorsement – to provide coverage for a lessor's direct acts of negligence in leasing employees or equipment to a motor carrier by allowing the lessor to assume responsibility by contract without running afoul of the non-trucking restrictions of the Coverage Form's Insuring Agreement" and "harmonizes the exception to the NTU Policy's contractual liability exclusion." (*Id.*)

In its Opposition, Great West argues that the Endorsement does not apply here for three overarching reasons: (1) no contractual obligation of reimbursement existed between Maric Transportation (as distinguished from Predrag Maric) and/or Ladejo with Wisconsin Trucks; (2) even if a contractual obligation existed, that contract does not require reimbursement; and (3) even if there was a contractual obligation of reimbursement, the Vehicle was not a covered auto under the Endorsement.  (Doc. No. 44 at 2-9.)  The Court will address each reason in turn.

### 1.    Contractual obligation

Defendants rely on the Independent Contractor and Policy Agreement between Maric and Wisconsin Trucks as the "contractual obligation . . . to reimburse the Motor Carrier to whom you are leased for any 'loss' due to an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto,'" under the Endorsement, arguing that such a contract expands the NTU Policy's coverage to cover the accident.  (Doc. No. 42 at 14-15.)  Great West responds that the Independent

16

Contractor and Policy Agreement is not between either Maric Transportation and Wisconsin Trucks or Ladejo and Wisconsin Trucks, but rather, is solely between Predrag Maric in his individual capacity and Wisconsin Trucks.  (Doc. No. 44 at 3-4.)  In their Reply, Defendants counter that paragraph 15 of the Independent Contractor and Policy Agreement "contemplates that Maric Transportation is responsible for accurately handling paperwork and is accountable regardless of whether the paperwork is negligently lost by a driver or Maric Transportation's clerical employees" and that the "insurance clauses in paragraphs 19-21 and excess liability allocation in paragraph 22 are not limited to liability arising out of Maric's personal operation of a truck, but are instead broadly worded to apply to any liability arising from an accident including claims of negligent hiring, supervision, and dispatch."  (Doc. No. 45 at 2-3.)

The Court agrees with Great West and holds that Defendants have failed to produce Rule 56 evidence of a contractual agreement between either Maric Transportation and Wisconsin Trucks or Ladejo and Wisconsin Trucks.  The Independent Contractor and Policy Agreement states: "I, Predrag Maric[,] understand and agree to the terms in this contract, dated Jan. 13, 2018."  (Doc. No. 46-1.) Nowhere does it provide that it is between Maric Transportation and Wisconsin Trucks.  In fact, the only place the contract mentions Maric Transportation is under Maric's signature line.  (*Id.*) Defendants argue that the inclusion of "Maric Transportation Inc" between "Contractor/Owner Operator" and "Predrag Maric" signifies that Maric was signing on behalf of Maric Transportation. However, Contractor/Owner Operator is how the position of the Independent Contractor is described in the first paragraph of the contract: "I understand that I am an Independent Contractor/Owner Operator."  (*Id.* at ¶ 1.)  Each of the paragraphs following refer to Maric as "I," or as an individual, and no language in the contract can be read to infer that the contract is referring to Maric

17

Transportation or any of its employees, including the language referenced by Defendants at paragraphs 15 and 19 through 22.

In fact, in describing the contract, Defendants state: "Maric was employed by Wisconsin Trucks as a dispatcher, and on January 13, 2018, signed an independent contractor agreement with Wisconsin Trucks allowing him to drive for that company." (Doc. No. 42 at 6.)  Defendants continue: "It is a fair inference that other employees of Maric Transportation including Ladejo had similar contracts with Wisconsin Trucks. (*Id.*)  An inference is not enough.  The contract at issue solely refers to Maric as the party to the contract, and the Court construes the contract to be between Maric, in his individual capacity, and Wisconsin Trucks.  Neither Maric Transportation nor Ladejo are parties to the contract.

Because Defendants have offered no other evidence of a contractual agreement between either Maric Transportation or Ladejo with Wisconsin Trucks, the Court holds that the Endorsement does not apply here and thus there is no coverage.

## 2.    Reimbursement requirement

Even if the Court construed the Independent Contractor and Policy Agreement to be between Wisconsin Trucks and Maric Transportation or Ladejo, the Endorsement would still not apply as the contract does not impose an obligation on the insured to reimburse the motor carrier, as required by the Endorsement.

In their Motion, Defendants assert that under the contract, "the driver assumes all responsibility for liability arising from his negligence in excess of the policy limit, and Wisconsin Trucks retains the right to deduct those amounts from the driver's pay."  (Doc. No. 42 at 15.) According to Defendants, this "equates to a contractual duty and right of reimbursement for tort

18

liability that falls within the definition of an "insured contract" as well as the insuring agreement of the [Endorsement]." (*Id.*)

In its Opposition, Great West interprets Defendants' arguments as referencing paragraphs 20 through 22 of the Independent Contractor and Policy Agreement which place responsibility for liability in excess of the policy limit upon Maric, and to paragraph 16 of the contract affording Wisconsin Trucks' the right to make certain deductions. (Doc. No. 44 at 4-6.) Great West argues that these provisions do not "provide a right or obligation on behalf of Predrag Maric to reimburse Wisconsin Trucks." (*Id.*) In their Reply, Defendants counter that while paragraph 22 "does not specify to whom Maric Transportation/Maric would be liable, [] the fair interpretation is that it gives Wisconsin Trucks a contractual right of indemnification from Maric Transportation/Maric if it is forced to pay an injured party damages in excess of its insurance policy limits," and thus, falls within the coverage of the Endorsement. (Doc. No. 45 at 4.)

The Court does not construe the Independent Contractor and Policy Agreement as providing a right to reimbursement. As to the issue of liability in excess of the policy limit, paragraph 22 does not specify to whom Maric would be liable, just that he would be liable for any amount above the $1 million policy limit of liability coverage provided by Wisconsin Trucks. This language does not require a reimbursement to Wisconsin Trucks, nor does it grant Wisconsin Trucks the right to seek reimbursement for such damages.

As to the right of Wisconsin Trucks to make certain deductions, paragraph 16 of the contract lists a number of conditions, and leaves open the potential for Wisconsin Trucks to take deductions for conditions "not listed" in which Maric "acknowledge[s] and give[s] Wisconsin Trucks, Inc. permission to withdraw and/or deduct monies from [his] net revenue/pay. (Doc. No. 46-1, ¶ 16.)

Again, this clause does not provide the right of Wisconsin Trucks to seek reimbursement for the listed or not listed conditions, but rather to deduct those amounts in the first instance from Maric's pay. And, while the list does include deductions for physical damage to the trailer and towing charges resulting from an accident, it does not contain a listed condition for deductions based on liability for bodily injury or other potential liability arising from an accident. Regardless of the conditions listed or any not listed, that the contract gives Wisconsin Trucks "permission to withdraw and/or deduct monies" cannot be construed as a right to reimbursement. And, without a right to reimbursement, the Endorsement is not triggered or applicable.

Accordingly, based on the reasons above, no coverage is afforded by the Endorsement.

### 3. Definition of Covered "Auto"

The Court rejects Defendants' argument that the term covered "auto" as used in the Endorsement is ambiguous so as to trigger the Endorsement. The Endorsement "APPLIES TO ALL COVERED 'AUTOS,'" and the parties stipulated that the truck and trailer being operated by Ladejo at the time of the accident was not on file with Great West; and the Vehicle was being used in the business of Wisconsin Trucks, to which it had been rented, leased, or owned at the time of the accident. Thus, the very language or terms of the Insuring Agreement of the policy are not triggered to provide liability coverage, and the Motor Carrier Operations Exclusion reinforces the conclusion that there is no coverage under these facts.

### D. Insured Contract

Defendants also argue that the Independent Contractor and Policy Agreement can be considered a covered "insured contract" under the exception to the assumed contract exclusion. (Doc. No. 42 at 15.) Great West does not address this argument.

20

Defendants' argument here is misplaced for at least two reasons.  First, the Court has already determined that the Independent Contractor and Policy Agreement is not a contract between Maric Transportation or Ladejo with Wisconsin Trucks, and thus, the contract does not give rise to coverage as to Maric Transportation or Ladejo.  Second, even if Maric Transportation and/or Ladejo were parties to the contract, the Court has also already determined that coverage does not exist under the Covered Autos Liability Coverage.  The Insuring Agreement provides that the insurance does not apply to covered autos being used to carry property in any business, or while being used in the business of anyone to whom the auto is rented, leased, or loaned, apply to preclude coverage to Maric Transportation and Ladejo.  (Doc. No. 38-1, PageID # 366, 370.)  The parties have stipulated that the Vehicle was being used in the business of the person or entity to whom the vehicle was rented, leased, or loaned at the time of the accident.  (Doc. No. 38, ¶ 9.)  Because there is no coverage in the first instance, the Court need not reach the exclusion to the coverage, let alone the exception to the exclusion.  Accordingly, whether the Independent Contractor and Policy Agreement is, in fact, an "insured contract" as defined under the exception to the assumed contract exclusion is irrelevant here.

### E.    Defendants' "Additional Facts"

Defendants devote nearly four pages of their Motion to setting forth what they delineate or caption "ADDITIONAL FACTS."  (Doc. No. 42 at 2-5.)  However, what Defendants describe as or delineate "ADDITIONAL FACTS" are only assertions or allegations, and not facts supported by any Rule 56 evidence.  Initially, Defendants describe the interstate trucking industry, and cite to case law describing "chameleon carriers"[11] and the "serious and persistent hazard" that they pose.  (*Id.* at 3-4.) Then, Defendants cite to portions of their Complaint in the Trumbull County Action for the remaining

---

[11]  A "chameleon carrier" is described by Defendants as an "ephemeral motor carrier created by a central controlling company to escape the repercussions of repeated safety and regulatory violations."  (Doc. No. 42 at 3.)

21

allegations set forth under "ADDITIONAL FACTS," to include the allegations that Maric Transportation is owned by Maric, and that Ladejo "appears to have been employed by Maric Transportation and/or dispatched by Maric to work for Wisconsin Trucks the day prior to the crash." (*Id.* at 4.)  Further, Defendants' arguments regarding the purpose of the Endorsement, and the insured's motivations for purchasing the Endorsement, are speculation and are unsupported by any evidence in the record as well as by the language of the NTU Policy itself.

       **F.**     **Defendants are bound by the determinations made by this Court.**

Lastly, Defendants do not seem to oppose Great West's argument that Defendants are bound by this Court's coverage determination.  Under Ohio law, "a declaratory judgment action between an insured and insurer seeking a declaration on the applicability of coverage for injuries to a plaintiff caused by the insured is binding upon that plaintiff . . . if the declaratory judgment action is initiated by the insured or if the plaintiff is joined as a party in the declaratory judgment action."  *Estate of Heintzelman v. Air Experts, Inc.*, 931 N.E.2d 548, 554 (Ohio 2010).  Thus, Defendants are bound by this Court's determination that no coverage exists under the NTU Policy as to Maric Transportation and Ladejo.

**V.**     **Conclusion**

For all the reasons set forth above, Great West's Motion for Summary Judgment (Doc. No. 39) is hereby GRANTED, and Defendants' Cross-Motion for Partial Summary Judgment (Doc. No. 41) is hereby DENIED.  Accordingly, the allegations against Maric Transportation and Ladejo in the Trumbull County Action are not covered by the NTU Policy; Great West is not obligated to provide coverage to either Maric Transportation or Ladejo under the NTU Policy; and Defendants are bound by the Court's coverage determinations.

**IT IS SO ORDERED.**

                                    *s/Pamela A. Barker*
                                   PAMELA A. BARKER
Date: September 16, 2022             U. S. DISTRICT JUDGE

23